# **EXHIBIT 11**

| | |
|---|---|
| COMBINED COURT, SAN MIGUEL COUNTY, COLORADO<br><br>Court Address: 305 West Colorado Avenue<br>P.O. Box 919<br>Telluride, Colorado 81435 | |
| PLANTSNAP INC.,<br><br>   Plaintiff,<br><br>v.<br><br>ERIC RALLS and EARTH.COM INC.,<br><br>   Defendants. | ▲ COURT USE ONLY ▲<br><br>Case Number:<br><br>Division:<br><br>Courtroom: |
| *Attorneys for Plaintiff*:<br>Dean E. Richardson (35349)<br>Patrick R. Akers (54803)<br>MOYE WHITE LLP<br>1400 16th Street, 6th Floor<br>Denver, Colorado 80202<br>(303) 292-2900<br>(303) 292-4510 (facsimile)<br>dean.richardson@moyewhite.com<br>patrick.akers@moyewhite.com | |
| **VERIFIED COMPLAINT AND JURY DEMAND** ||

Plaintiff PlantSnap Inc. ("**PlantSnap**") files this Verified Complaint and Jury Demand against Defendants Eric Ralls ("**Ralls**") and Earth.com Inc. ("**Earth**," and with Ralls, the "**Defendants**") and states as follows:

### PARTIES, JURISDICTION, AND VENUE

1.  PlantSnap is a Delaware corporation with its principal office located at 473 ½ West Colorado Avenue, Telluride, Colorado 81435.

2.  Ralls is an individual that resides at 473 ½ West Colorado Avenue, Telluride, Colorado 81435.

3.  Earth is a Nevada corporation with its principal office located at 473 ½ West Colorado Avenue, Telluride, Colorado 81435.

4.  The Court has jurisdiction over this matter pursuant to C.R.S. § 13-1-124.

Exhibit 11
Page 1 of 16

5. Venue is proper in this Court pursuant to C.R.C.P. 98(c) because the Defendants reside in San Miguel County, Colorado.

## GENERAL ALLEGATIONS

### PlantSnap Formation

6. Ralls founded PlantSnap in 2016.

7. From PlantSnap's formation until March 9, 2021, Ralls was PlantSnap's majority shareholder, director, and Chief Executive Officer.

8. PlantSnap owns a mobile application that allows users to identify plant types through their cell phone camera (the "**PlantSnap App**").

9. PlantSnap's operations are conducted through numerous accounts, including, but not limited to, Alpine Bank, Amazon Web Services ("**AWS**"), Apple App Store Connect, CleverTap, Dropbox, Facebook, Firebase, GoDaddy, Google Play Console, Google Workspace (G Suite), Huawei HMS Store, Imagga, Instagram, No Marker, Pinterest, QuickBooks, and Singular (collectively, the "**Accounts**").

10. Ralls has complete control over the Accounts.

11. In February 2017, DEJ Partners, LLC f/k/a DEJ Family Limited Partnership ("**DEJP**," and with PlantSnap and Ralls, the "**Contracting Parties**") became PlantSnap's first major seed investor.

12. Daniel Johnson ("**Johnson**") is the general partner of DEJP.

### Agreements Between the Contracting Parties

13. Over the course of two years, the Contract Parties executed numerous agreements in which DEJP loaned money or extended credit to PlantSnap.

14. PlantSnap defaulted on two of its obligations on February 24, 2021.

### Consolidated Note

15. PlantSnap and DEJP executed that certain Consolidated Note dated September 30, 2019 in the principal amount of $9,103,301.44 (the "**Consolidated Note**"). A copy of the Consolidated Note is attached as Exhibit 1.

16. The Consolidated Note consolidated, in part, obligations under various agreements, including the following:

    a. Accounts Receivable Loan Pledge Agreement dated July 12, 2017 between the Contracting Parties, as amended by that the Amended and Restated Accounts Receivable Loan and Pledge Agreement dated August 9, 2017 (the "**A&R Agreement**").

b. Royalty Agreement dated July 26, 2017 between the Contracting Parties, as amended by that certain Amended and Restated Royalty Agreement dated May 24, 2018 (the "**Royalty Agreement**"). A copy of the Royalty Agreement is attached as Exhibit 2.

c. Royalty Agreement dated September 30, 2018 between the Contracting Parties (the "**Consolidated Royalty Agreement**").

17. The Consolidated Note matured when DEJP demanded payment of the unpaid portion of the principal amount and any accrued but unpaid interest at any time after September 2, 2019. Consolidated Note § 1(a).

18. Under the Consolidated Note, an Event of Default occurs when PlantSnap fails to pay the amounts due under the Consolidated Note when due. *Id.* § 6(a)(i).

19. As security for PlantSnap performing its obligations under the Consolidated Note, as well as the A&R Agreement, Royalty Agreement, and Consolidated Royalty Agreement, Ralls agreed to pledge 750,000 shares of common stock in PlantSnap (the "**Pledged Shares**").

20. The Consolidated Note states that Ralls "assigns, transfers, sets over and delivers all of the Pledged [Shares] to [DEJP], to have and to hold the Pledged [Shares]." Consolidated Note § 4(b).

21. The Consolidated Note states, "[a]ll instruments representing or evidencing the Pledged Collateral shall be delivered to and held by or on behalf of Buyer pursuant hereto and shall be accompanied by duly executed instruments of transfer or assignment in blank, including duly executed blank stock powers." *Id.* § 4(d).

22. The Consolidated Note further states, "[u]pon the occurrence and during the continuation of an Event of Default, then or at any time after such declaration and following written notice to Ralls, Buyer . . . is hereby authorized and empowered to transfer and register in its name or in the name of its nominee the whole or any part of the Pledged Collateral." *Id.* § 4(g)(i).

23. In connection with the Royalty Agreement, Ralls executed the Assignment Separate from Certificate (the "**Stock Power**"). *See* Royalty Agreement 12.

24. The Pledged Shares were secured at Pivotal Law Firm, Inc. ("**Pivotal**").

25. The Stock Power enabled DEJP to effectuate taking possession of the Pledged Shares upon the occurrence of an event of default.

Credit Agreement

26. The Contracting Parties executed that certain Credit and Reimbursement Agreement dated August 15, 2017 (the "**Credit Agreement**," and with the Consolidated Note, the "**Obligations**"). A copy of the Credit Agreement is attached as Exhibit 3.

27. Pursuant to the Credit Agreement, Johnson authorized PlantSnap to use DEJP's American Express card (the "**Card**") in exchange for the repayment of card charges plus interest.

3

Exhibit 11
Page 3 of 16

28. The charged amounts and interest on those charged amounts became due and payable within five days of receipt of the Card statement. Credit Agreement § 2.

29. Under the Credit Agreement, an Event of Default occurs when PlantSnap fails to pay the amounts due under the Credit Agreement when due, and fails to cure such default within five business days of written notice of the default. *Id.* § 7(a)(i).

30. PlantSnap agreed to "only use the [Card] for reasonable or necessary company related expenses." *Id.* § 1.

31. PlantSnap agreed to "obtain prior written approval of [DEJP] prior to making charges in excess of $10,000." *Id.*

32. Ralls received one mile of airline rewards for each dollar charged on the Amex card. *Id.* § 3.

33. As security for PlantSnap performing its obligations under the Credit Agreement, Ralls agreed to pledge the Pledged Shares.

34. The total number of the Pledged Shares pledged under the Credit Agreement was related to the total amount owed under the Credit Agreement at the time of the Event of Default. *Id.* § 5(g)(i).

35. For example, if the total amount owed under the Credit Agreement at the time of the Event of Default was $3,000.00, then the total number of the Pledged Shares pledged under the Credit Agreement was 3,000. *Id.*

36. The Credit Agreement states that Ralls "assigns, transfers, sets over and delivers all of the Pledged [Shares] to [DEJP], to have and to hold the Pledged [Shares]." *Id.* § 5(b).

37. The Credit Agreement states, "All instruments representing or evidencing the Pledged Collateral shall be delivered to and held by or on behalf of Buyer pursuant hereto and shall be accompanied by duly executed instruments of transfer or assignment in lank, including duly executed blank stock powers." *Id.* § 5(d).

38. The Credit Agreement further states, "Upon the occurrence and during the continuation of an Event of Default, then or at any time after such declaration and following written notice to Ralls, Buyer . . . is hereby authorized and empowered to transfer and register in its name or in the name of its nominee the whole or any part of the Pledged Collateral." *Id.* § 5(g)(i).

**PlantSnap Defaults on the Obligations**

39. PlantSnap defaulted on the Obligations.

40. As of February 24, 2021, PlantSnap failed to repay $11,398,304.11 in outstanding principal and interest under the Consolidated Note.

4

Exhibit 11
Page 4 of 16

41. As of February 24, 2021, PlantSnap failed to repay $978,043.23 in outstanding principal and interest under the Credit Agreement.

42. On February 24, 2021, DEJP sent the Notice of Default and Demand for Repayment to PlantSnap (the "**Notice of Default**"). A copy of the Notice of Default, showing receipt on February 26, 2021, is attached as Exhibit 4.

43. PlantSnap failed to cure the defaults under the Obligations within five business days of the Notice of Default.

44. An Event of Default occurred under the Obligations.

**Ralls Is No Longer a Shareholder, Director, or Officer of PlantSnap**

45. On March 6, 2021, DEJP sent a letter to Ralls, notifying him that DEJP intended to exercise its right to take ownership of the Pledged Shares (the "**Notice of Invocation**"). A copy of the Notice of Invocation, indicating receipt on March 8, 2021, is attached as Exhibit 5.

46. Ralls received the Notice of Invocation on March 8, 2021. *See* Ex. 5.

47. On March 8, 2019, following receipt of the completed Stock Power and confirmation that Ralls received the Notice of Invocation, PlantSnap transferred the Pledged Shares from Ralls to DEJP on PlantSnap's stock ledger. A copy of the completed Stock Power is attached as Exhibit 6.

48. On March 9, 2021, Pivotal delivered the Pledged Shares to Johnson and PlantSnap's counsel.

49. DEJP became the majority shareholder of PlantSnap as a result of the transfer.

50. On March 9, 2021, DEJP provided a signed written consent to PlantSnap that removed Ralls as a director on PlantSnap's Board of Directors (the "**Board**").

51. DEJP appointed Johnson as the sole member of the Board.

52. On March 9, 2021, the Board issued a Written Consent of the Board of Directors of PlantSnap Inc. (the "**Resolutions**"). The Resolutions are attached as Exhibit 7.

53. The Resolutions provided that:

    a. Ralls was removed from any and all officer or director positions with PlantSnap;

    b. Ralls was removed as an authorized person and/or signatory on PlantSnap's accounts or contracts;

    c. Ralls no longer has the authority to act on behalf of PlantSnap; and

5

Exhibit 11
Page 5 of 16

    d.  Matthew Giblin ("**Giblin**"), the Chief Operations Officer, was appointed as the Chief Executive Officer, Treasurer, and Secretary.

  54.  On March 11, 2021, PlantSnap's counsel sent a cease and desist and demand for turnover letter to Ralls (the "**Cease and Desist Letter**").  The Cease and Desist Letter is attached as <u>Exhibit 8</u>.

  55.  Ralls received the Cease and Desist Letter, and hired counsel, who reached out to PlantSnap's counsel—but has thus far refused to substantively respond to counsel's emails.

**Ralls' Actions as Director, Officer, and Majority Shareholder of PlantSnap**

<u>Ralls' Self-Dealing with Earth</u>

  56.  Earth operates the website, http://www.earth.com/.

  57.  Earth provides news and information concerning nature, science, and the environment.

  58.  Ralls is the president, secretary, treasurer, and director of Earth.

  59.  Upon information and belief, Earth is the alter ego of Ralls.

  60.  Ralls used PlantSnap's manpower and property as part of Earth's operations.

  61.  The database that comprises the plant profiles, which allow the PlantSnap App to function, is in the possession or control of Earth.

  62.  PlantSnap does not have access to those plant profile pages.

  63.  PlantSnap ran three crowdfunding campaigns.

  64.  At the onset of the third campaign in October 2019, Giblin was responsible for preparing financials and having PlantSnap's financials audited.

  65.  During that process, Giblin discovered, for the first time, that Ralls had been paying Earth hundreds of thousands of dollars under the category, "Advertising," under a certain Sponsorship Agreement dated January 1, 2017 between PlantSnap and Earth (the "**Advertising Agreement**").  A copy of the Advertising Agreement is attached as <u>Exhibit 9</u>.

  66.  The Advertising Agreement provided no discernable value to PlantSnap.

  67.  Upon information and belief, Ralls and Earth executed the Advertising Agreement in an effort to justify monetary transfers from PlantSnap to Earth.

  68.   Following the discovery that Ralls transferred PlantSnap's funds to Earth, Ralls signed a Debt Cleanup Board Resolution, which required Ralls to (a) transfer financial control to Giblin and Johnson for budgeting and banking purposes, and (b) segregate funds from the third crowdfunding campaign into a separate bank account.

6

Exhibit 11
Page 6 of 16

69. Ralls signed the Debt Cleanup Board Resolution with no intention to abide by its terms.

70. Ralls refused Giblin access to PlantSnap's bank account.

71. Ralls refused to change the signatory authority on PlantSnap's bank account.

DHN Unauthorized Loan and Misrepresentations

72. The Contracting Parties and Earth executed a certain Memorandum of Terms for Purchase of Series Seed Preferred Stock of PlantSnap Inc. dated January 27, 2021 (the "**Memorandum**").  The Memorandum is attached as Exhibit 10.

73. The nonbinding Memorandum was entered into in an attempt to reduce PlantSnap's obligations to DEJP by converting DEJP's debt to equity, and to prevent DEJP from issuing a notice of default.

74. The Memorandum refers to Ralls and Earth as if they were one entity.

75. The Contracting Parties and Earth made several representations as part of the Memorandum.

76. One of those representations concerned PlantSnap's relationship with Evergreen Garden Center ("**Evergreen**"), and a payment made by Evergreen in the amount of $300,000.00 pursuant to an agreement between PlantSnap and Evergreen (the "**Evergreen Payment**").

77. Ralls represented, "Ralls warrants that he has not, as of the date of this Memorandum, and will not, hypothecate, pledge, promise, factor, obtain an advance upon, or encumber in any other fashion the proposed initial Evergreen partnership payment." Memorandum 10.

78. Despite representing that he would not "obtain an advance upon" the Evergreen Payment, Ralls had already taken the letter of intent that the Evergreen Payment was based on to DHN Capital, LLC d/b/a Nations Interbanc ("**DHN**"), a factoring company, on or around December 24, 2020.

79. Ralls obtained $214,000.00 in accounts receivable advance loans from (the "**DHN Advance**").

80. As collateral for the DHN Advance, Ralls assigned the revenue that PlantSnap received from MonetizeMore and two app stores (the "**Collateral Sources**")

81. Giblin discovered the existence of the DHN Advance upon the Evergreen Payment in February 2021.

82. On February 15 and 17, 2021, Giblin informed Ralls that he lacked authority to undertake the DHN Advance.

7

Exhibit 11
Page 7 of 16

83. DHN required that the payments from the Collateral Sources deposit directly into a DHN sweep account.

84. DHN did not receive the December and January MonetizeMore remittances.

85. Ralls changed the remittance instructions and redirected several payments to PlantSnap's accounts, including a $10,457.29 payment on January 19, 2021 and a $6,458.24 payment on February 16, 2021.

86. Ralls transferred a substantial portion of the diverted revenue from the Collateral Sources from PlantSnap to Earth.

87. DHN issued a notice of default to PlantSnap, and demanded that PlantSnap cure its default by March 1, 2021.

88. Ralls cured the default sometime in March 2021 after DHN threatened to notify the two app stores, the major sources of revenue for PlantSnap, and only after transferring more than $80,000.00 of the Evergreen Payment to Earth.

89. Ralls' actions and false misrepresentation effectively destroyed PlantSnap's ability to eliminate more than $5,971,186.47 in outstanding obligations to DEJP.

## AWS Electronic Payment Error

90. PlantSnap's servers are hosted by AWS.

91. Without AWS, the PlantSnap App would cease functioning without another web hosting service.

92. In December 2020, PlantSnap was three months behind in payments to AWS and owed approximately $33,000.00.

93. In January 2021, Ralls represented to AWS and Giblin that Ralls had paid the delinquent payments.

94. Ralls intentionally deceived AWS and PlantSnap into believing Ralls sent the payments.

95. Upon information and belief, Ralls initiated an electronic transfer to AWS when he was aware that there were insufficient funds to cover such payments, and then took a screen shot of the initiated payment and shared that screen shot with AWS.

96. AWS later reported that there was an error with the payments.

97. Several days later, Ralls claimed not to know what happened and stated there must be an error in the payment system.

8

Exhibit 11
Page 8 of 16

### Ralls Continues to Wrongly Act on Behalf of PlantSnap

98. Since losing his shares in PlantSnap and being removed as an officer and director of PlantSnap, Ralls had taken a number of steps to cover his tracks and assert control over PlantSnap's operations.

99. Upon learning that DEJP intended to invoke its rights under the Obligations, Ralls began transferring funds previously diverted from PlantSnap to Earth back to PlantSnap's account and to PlantSnap's vendors.

100. Between February 22 and March 10, 2021, Ralls made twenty-three transfers totaling $240,100.00 from Earth to PlantSnap.

101. Ralls has ignored the Board's resolutions, and has frustrated PlantSnap's operations.

102. Ralls has refused to turnover the Accounts to PlantSnap.

103. Ralls has prevented Giblin, PlantSnap's Chief Executive Officer, from accessing the Accounts, including PlantSnap's bank accounts and the two app stores, where a majority of PlantSnap's revenue is earned. On March 14, 2021, Ralls cut off Giblin's access to his company email account.

104. Ralls has prevented PlantSnap's consultants from accessing certain Accounts, inhibiting the consultants from performing their work as directed by the Board.

105. Ralls continues to send messages to PlantSnap's contract counterparties, vendors, customers, and consultants claiming to be acting on PlantSnap's behalf.

106. Ralls has unequivocally stated that he will continue to act on PlantSnap's behalf, despite being removed as a shareholder and CEO.

107. In a March 13, 2021 email to Evergreen and select PlantSnap individuals, Ralls indicated that he would continue to work on the PlantSnap/Evergreen partnership. A copy of this email is attached as attached as <u>Exhibit 11</u>.

108. On March 15, 2021, Ralls sent an email to certain consultants, stating "I AM allowed/able and that I SHOULD continue operating the company," and that he will continue "working to get PlantSnap 5.0 WITH all Evergreen content fully implemented and launched by April 1." *Id.*

109. Because PlantSnap cannot access the Accounts, PlantSnap cannot respond to time-sensitive business communications; may lose business as a result of its inability to communicate with contact counterparties, vendors, and customers; and is faced with the ongoing threat that Ralls will send unauthorized communications.

## COUNT I
## Declaratory Judgment
## (Against Ralls)

110. PlantSnap incorporates its prior allegations as if fully set forth herein.

111. PlantSnap is entitled to a declaratory judgment that the Resolutions effectively remove Ralls as an officer and director of PlantSnap.

112. A justiciable controversy exists pursuant to C.R.C.P. 57 and C.R.S. §§ 13-51-101 to -115.

113. An actual controversy exists because Ralls continues to act on PlantSnap's behalf and disrupts its operations despite the Board removing Ralls on March 9, 2021.

## COUNT II
## Conversion
## (Against Ralls and Earth)

114. PlantSnap incorporates its prior allegations as if fully set forth herein.

115. Ralls and Earth have wrongfully exercised dominion or ownership over PlantSnap's property including, but not limited to, the Accounts.

116. PlantSnap has demanded that Ralls and Earth return PlantSnap's property.

117. Ralls and Earth have refused to return PlantSnap's property.

## COUNT III
## Civil Theft
## (Against Ralls and Earth)

118. PlantSnap incorporates its prior allegations as if fully set forth herein.

119. Ralls and Earth took and deposited funds that belong to PlantSnap.

120. Ralls and Earth took and exerted control or possession over property that belongs to PlantSnap including, but not limited to, the Accounts.

121. Ralls and Earth's conduct was willful, wanton, and malicious.

122. Pursuant to C.R.S. § 18-4-405, Ralls and Earth engaged in civil theft, and are indebted to PlantSnap for treble damages in an amount to be determined at trial plus interest at the statutory rate of eight-percent per annum.

123. Pursuant to C.R.S. § 18-4-405, PlantSnap is entitled to its reasonable attorneys' fees and costs in connection with this action.

## COUNT IV
## Breach of Fiduciary Duties
## (Against Ralls)

124. PlantSnap incorporates its prior allegations as if fully set forth herein.

125. Ralls, as an officer and director of PlantSnap, owed fiduciary duties to PlantSnap, including the duty of loyalty and the duty of care, during all periods relevant to this action.

126. As a fiduciary, Ralls has a duty to protect the rights of PlantSnap, act openly and above board, manage the corporate affairs in good faith, and give PlantSnap the benefit of his best judgment and care.

127. Ralls also has a duty to put the best interest of PlantSnap and its shareholders over his own interests.

128. Ralls breached his fiduciary duties when he entered into unauthorized loans on behalf of PlantSnap, and transferred funds and personal property from to PlantSnap to himself and Earth.

129. PlantSnap suffered damages as a result of Ralls' breaches of fiduciary duties in an amount to be proven at trial.

## COUNT V
## Aiding and Abetting Breach of Fiduciary Duties
## (Against Earth)

130. PlantSnap incorporates its prior allegations as if fully set forth herein.

131. Ralls owed fiduciary duties to PlantSnap.

132. Ralls breached his fiduciary duties to PlantSnap.

133. Earth knowingly participated in Ralls' breach of fiduciary duties to PlantSnap.

134. PlantSnap suffered damages as a result of Ralls' breaches of fiduciary duties in an amount to be proven at trial.

## COUNT VI
## Fraud
## (Against Ralls)

135. PlantSnap incorporates its prior allegations as if fully set forth herein.

136. Ralls made false representations of material fact in connection with the Debt Cleanup Board Resolution and the Memorandum.

137. Ralls knew the representations were false.

138. Ralls had no intention to grant Giblin access to or change the signatory on PlantSnap's bank account as required under the Debt Cleanup Board Resolution.

139. Ralls stated he would not pledge the Evergreen Payment having already done so several weeks earlier.

140. PlantSnap had no knowledge that Ralls, an officer and director of PlantSnap at the time, would breach the Debt Cleanup Board Resolution.

141. PlantSnap did not discover the existence of the DHN Advance upon the Evergreen Payment until February 2021.

142. The representations were made with the intent that PlantSnap could engage in the fourth crowdfunding campaign and that DEJP would not declare PlantSnap's obligations in default.

143. The false representations resulted in PlantSnap defaulting on its obligations, Ralls siphoning funds to himself or Earth, and PlantSnap losing the ability to access its bank account.

## COUNT VII
## Unjust Enrichment
## (Against Ralls and Earth)

144. PlantSnap incorporates its prior allegations as if fully set forth herein.

145. Ralls and Earth received benefits by taking funds and personal property that belong to PlantSnap.

146. These benefits were received at PlantSnap's expense and were improper.

147. The circumstances are such that it would be unjust for Ralls and Earth to retain these benefits.

## COUNT VIII
## Constructive Trust
## (Against Ralls and Earth)

148. PlantSnap incorporates its prior allegations as if fully set forth herein.

149. Ralls and Earth obtained PlantSnap's cash and property by fraud and breach of fiduciary duties.

150. Ralls owed PlantSnap fiduciary duties to PlantSnap as a majority shareholder, officer, and director of PlantSnap.

151. Ralls breached his fiduciary duties by making improper distributions to himself and Earth, and by taking property belonging to PlantSnap.

152. A constructive trust should be created for PlantSnap's benefit, consisting of the following:

    a. The amounts which were improperly transferred to Ralls and Earth from PlantSnap;

    b. The database that comprises the plant profiles, PlantSnap's infrastructure and technology associated with the operations of the PlantSnap App, and PlantSnap's intellectual property; and

    c. Any other property belonging to PlantSnap in the possession of Ralls, Earth, or any of their agents or any acting on their behalf.

## COUNT IX
### Tortious Interference with Contractual Relationships
### (Against Ralls)

153. PlantSnap incorporates its prior allegations as if fully set forth herein.

154. PlantSnap had a binding agreement with Evergreen.

155. Ralls knew of the PlantSnap/Evergreen partnership.

156. Ralls intentionally induced Evergreen to work with Ralls, and not PlantSnap.

157. Ralls has effectively removed PlantSnap as a party to the agreement.

158. PlantSnap is unable to upgrade the PlantSnap App with improvements derived through the Agreement.

159. PlantSnap has incurred damages in an amount to be proven at trial.

## COUNT X
### Temporary Restraining Order and/or Preliminary Injunction
### (Against Ralls)

160. PlantSnap incorporates its prior allegations as if fully set forth herein

161. If Mr. Ralls is permitted to continue his destructive behavior, PlantSnap and its investors will suffer irreparable loss and damage.

162. PlantSnap has no plain, adequate, or speedy remedy at law, and all other prerequisites to this Court entering a Temporary Restraining Order and/or Preliminary Injunction have been satisfied.

163. Rule 65 of the Colorado Rules of Civil Procedure empowers this Court to grant equitable relief as necessary to prevent PlantSnap's irreparable injury.

WHEREFORE, PlantSnap respectfully requests that the Court enter judgment in its favor against Ralls and Earth as follows:

A. Grant temporary and mandatory injunctive relief

    1. enjoining Ralls from acting on behalf of PlantSnap and telling any third parties that he is currently affiliated with PlantSnap, and

    2. ordering Ralls to turnover complete access to the Accounts, provide the usernames and passwords, and take the necessary steps to effectuate the complete transfer of the Accounts;

B. Declare that the Resolutions effectively removed Ralls as an officer and director of PlantSnap;

C. Award it damages —actual, consequential, expectation, restitution, and/or reliance, as allowed by law—in an amount to be determined at trial caused by Ralls' civil theft, fraud, breach of fiduciary duties, unjust enrichment, and tortious interference with contractual relationship;

D. Award it damages—actual, consequential, expectation, restitution, and/or reliance, as allowed by law—in an amount to be determined at trial caused by Earth's civil theft, aiding and abetting of breach of fiduciary duties, and unjust enrichment;

E. Award it treble damages in an amount to be determined at trial plus interest at the statutory rate of eight-percent per annum;

F. Award it its reasonable attorneys' fees and costs in connection with this action;

G. Award all pre- and post-judgment interest allowed by law;

H. An award of all prejudgment moratory interest allowed by law, based upon Defendants' wrongful withholding, pursuant to C.R.S. § 5-12-102;

I. Establish a constructive trust for PlantSnap's benefit upon

    1. the amounts which were improperly transferred to Ralls and Earth from PlantSnap;

    2. the database that comprises the plant profiles, PlantSnap's infrastructure and technology associated with the operations of the PlantSnap App, and PlantSnap's intellectual property; and

    3. any other property belonging to PlantSnap in the possession of Ralls, Earth, or any of their agents or any acting on their behalf;

J. Enter any other relief the Court finds equitable, just, and proper.

## PLANTSNAP REQUESTS A JURY TRIAL ON ALL MATTERS SO TRIABLE

      Respectfully submitted,

      */s/ Patrick R. Akers*
      Dean E. Richardson (35349)
      Patrick R. Akers (54803)
      *Attorney for Plaintiff*

Plaintiff's current address:
P.O. Box 3740
Telluride, CO 81435-3740
(but in the process of being changed)

15

Exhibit 11
Page 15 of 16

## DECLARATION

I, Matthew Giblin, pursuant to C.R.S. 13-27-101, *et seq.*, declare under the penalty of perjury under the law of Colorado that the forgoing is true and correct.

Executed on this 17th day of March 2021 at Denver, Colorado.

_____
Matthew Giblin

16

Exhibit 11
Page 16 of 16