**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| In re:<br><br>ERIC RALLS,<br><br>        Debtor. | Case No.  24-60504<br><br>Chapter 7 |
| HI INVESTMENTS, LLC,<br><br>        Plaintiff,<br>   v.<br><br>ERIC RALLS,<br><br>        Defendant. | Adv. Pro. No. 24-06045 |

**AMENDED COMPLAINT FOR DETERMINATION OF DEBT,**
**NONDISCHARGEABILITY OF DEBT UNDER**
**11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), (a)(4), AND (a)(6), AND FOR OTHER RELIEF**

HI Investments, LLC ("HI"), by and through its undersigned counsel, hereby submits the following *Amended Complaint for Determination of Debt, Nondischargeability of Debt Under 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6), and for Other Relief* ("Complaint") against Eric Ralls ("Ralls"), as more particularly set forth herein.

## I. JURISDICTION AND VENUE

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(a) and (b).

2.     Venue is proper in this district pursuant to 28 U.S.C. § 1409.

3.     This proceeding has been brought in accordance with Bankruptcy Rules 7001(6), (7) and (9).

4.     This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(I) and (J).

5.     Pursuant to Bankruptcy Rule 7008, HI consents to adjudication and entry of final orders and judgments by this Court for any and all matters arising in or related to this adversary proceeding.

34317889.2

6.     This Complaint is timely because the last date by which HI may oppose discharge or dischargeability is July 21, 2025. *See* Case No. 24-60504, Docket No. 45.

## II. PARTIES

7.     **Plaintiff**. HI is a Delaware limited liability company engaged in the business of consulting with, and investing in, entities that produce income through internet advertising and mobile application ("app") development.

8.     **Defendant**. Upon information and belief, Ralls is a resident of the of the city of Tyler, Texas in Smith County. Ralls is or was at all times relevant hereto a shareholder, owner, officer, director, or otherwise a principal of non-debtor entities, Digital Earth Media, Inc. (a Delaware corporation) ("DEM") and Earth.com, Inc. (a Nevada corporation) ("Earth") and non-debtor entity EarthSnap, Inc. (a Delaware corporation) ("EarthSnap"). As the sole officer of each entity, Ralls was at all times relevant hereto the person in control of the finances and financial decisions of DEM, Earth and EarthSnap.

9.     Ralls and his above-referenced entities are each the alter egos of the other and are jointly and severally liable for the acts and omissions detailed herein.

10.     On August 18, 2024, Ralls filed a voluntary petition for relief under chapter 11, subchapter V of the Bankruptcy Code in the United States District Court for the Eastern District of Texas, Case No. 24-60504. EarthSnap also filed a voluntary petition for relief under chapter 11, subchapter V of the Bankruptcy Code in this Court earlier on June 17, 2024, Case No. 24-60363.

11.     The deadline for filing proofs of claim in Ralls' bankruptcy case was October 28, 2024.

12.     On October 28, 2024, HI timely filed its proof of claim in the amount of $1,248,000.00. Case No. 24-60504, Claim No. 11-1. A true and correct copy of the proof of claim without exhibits is attached hereto as **Exhibit 1**.

13.     HI also timely filed a proof of claim in the amount of $1,248,000.00 against EarthSnap in its bankruptcy case. *See* Case No. 24-60363, Claim No. 6-1. A true and correct copy of the proof of claim without exhibits is attached hereto as **Exhibit 2**.

## III. BACKGROUND FACTS

**A.     HI's Initial Investments Were Based Upon the False Statement That Ralls Owned the Earth.com Domain Through One of His Entities.**

14.     Upon information and belief, Ralls incorporated EarthSnap on May 19, 2021.

15.     Upon information and belief, Ralls incorporated DEM on May 26, 2021.

16.     Upon information and belief, on or shortly after May 26, 2021, Ralls transferred all of his equity interests in Earth to DEM.

2

17.    In or about August 2021, HI's principals were introduced to Ralls, who claimed to be a successful entrepreneur and the inventor/developer of "PlantSnap," a popular plant-identification app. At the time, Ralls was seeking a $750,000 investment in exchange for a minority equity stake in a new company he had just formed: DEM.

18.    As stated by Ralls, the purpose of DEM was to hold a 100% interest in two subsidiaries: (1) Earth, an entity that owned the associated domain (Earth.com) and operated a sprawling company website and (2) EarthSnap, an entity that was developing an app that, using innovative AI technology, could purportedly identify both plants and animals.

19.    To secure funds from HI, Ralls specifically touted the number of pages and volume of content on Earth.com's website, as well as the technology and intellectual property developed by EarthSnap, which Ralls described as the "holy grail of image recognition applications." These assets, Ralls posited, would potentially make DEM worth $250 million by 2024 based upon the "revenue generated by the Earth.com website and Earth.com mobile app, and the EarthSnap app."

20.    Upon information and belief, EarthSnap and Earth are wholly owned and controlled by DEM.

21.    Ralls advised HI that he held every officer position in Earth and EarthSnap.

22.    Ralls is a director of Earth and EarthSnap.

23.    Upon information and belief, Earth, EarthSnap, and DEM are each substantially controlled by and mere instrumentalities of Ralls.

24.    Earth and its entire business depends upon and is built upon the Earth.com domain. Without the domain and the website hosted on that domain, Earth has nothing.

25.    Aware that the only asset with significant present value was the Earth.com domain, HI specifically sought assurance from Ralls that Earth actually owned the underlying domain.

26.    HI would have never invested in any of Ralls' entities had HI known that Ralls was misrepresenting ownership of the Earth.com domain.

27.    On August 27, 2021, HI's principal explained to Ralls, "our main concern for investment is either the holding company or operating companies have legal title to the domain names since that is how we came up with valuation." A true and correct copy of an email exchange between HI's principal and Ralls is attached as **Exhibit 3**.

28.    Minutes later, Ralls responded: "Yes, Digital Earth Media, Inc. is the holding company that owns Earth.com Inc. (website and domain name) and EarthSnap, Inc . . . I thought it would be better to keep the website and domain (Earth.com, Inc.) operations separate from EarthSnap operations." *See* **Exhibit 3**.

29.    Two hours later, Ralls reiterated, "[t]o further clarify, Earth.com, Inc. . . . owns both the domain and the website." *See* **Exhibit 3**.

30.    On other occasions, Ralls reaffirmed that he or his referenced entities owned the Earth.com domain.

31.    Ralls and his entities have no ownership interest in the Earth.com domain.

32.    Ralls' affirmation of domain ownership was a complete misrepresentation. At the time that Ralls expressly affirmed that he (through DEM and Earth) owned the Earth.com domain, Ralls knew that DEM and/or Earth did not, in fact, own the domain.

33.    A true and correct copy of Earth's schedules and summary of assets and liabilities in the bankruptcy case of Earth filed in the United States District Court for the District of Colorado (Case No. 23-11621) is attached as **Exhibit 4**. Rather, Ralls had merely signed a "Rent to Own Agreement" with the domain's owner, who, upon information and belief, was entitled to approximately $5 million in additional payments from Ralls (or DEM or Earth) before domain ownership would be transferred. *See* **Exhibit 4** at 2.

34.    Upon information and belief, Earth rented the Earth.com domain pursuant to the Rent to Own Agreement dated June 27, 2016 between Ralls Enterprises, LLC and Innovation HQ, Inc. ("**Innovation**").

35.    Upon information and belief, Earth defaulted on the Rent to Own Agreement within months of executing it.

36.    Ralls intentionally concealed and did not disclose any of this information related to the Earth.com domain to HI Investments.

37.    Days after Ralls misrepresented his ownership of the multimillion-dollar Earth.com domain in August 2021, HI wired $125,000 to Earth in exchange for an equivalent "bridge promissory note" from DEM. A true and correct copy of the Bridge Promissory Note dated September 1, 2021 is attached as **Exhibit 5**.

38.    Two months later, on or about November 2, 2021, HI wired a second payment of $300,000 to Earth in exchange for another accompanying "bridge promissory note." A true and correct copy of the Bridge Promissory Note dated November 2, 2021 is attached as **Exhibit 6**.

39.    On December 1, 2021, HI wired an additional payment of $175,000 to Earth, again obtaining a matching promissory note from DEM. A true and correct copy of the Bridge Promissory Note dated December 1, 2021 is attached as **Exhibit 7**.

40.    On December 30, 2021, HI wired an additional payment of $150,000 to Earth, again obtaining a matching promissory note from DEM. A true and correct copy of the corresponding Bridge Promissory Note dated December 30, 2021 is attached as **Exhibit 8**.

34317889.2

**B.     HI Became a Minority Equity Owner of One of Ralls' Entities After Ralls Continued to Make the False Representations.**

41.     On or about February 16, 2022, HI executed a Series Seed Preferred Stock Subscription Agreement ("Subscription Agreement") with DEM, agreeing to cancel all previously-issued Bridge Promissory Notes (totaling $750,000) in exchange for the receipt of 916,667 shares of DEM preferred stock. A true and correct copy of the Subscription Agreement is attached as **Exhibit 9**.

42.     Upon the execution of the Subscription Agreement, HI became the owner of approximately 10% of DEM equity.

43.     Ralls and DEM made several representations as part of the Subscription Agreement.

44.     In the Subscription Agreement, DEM (through Ralls) affirmed that it had provided to HI complete and accurate financial information relating to Earth and EarthSnap "as of June 30, 2021." *See* **Exhibit 9** at § 3(g).

45.     Notably, the June 30, 2021 balance sheet that Ralls provided for Earth (the "Balance Sheet") did not include a specific line item for the Earth.com domain name. A true and correct copy of the Balance Sheet and Earth's profit-and-loss statement is attached as **Exhibit 10**.

46.     When asked about the omission, Ralls explained to HI's principal that he had previously depreciated the domain name's book value to $0, which was why the asset did not separately appear.

47.     The same Balance Sheet notably did not disclose any liability for the $5 million that was owed to the domain's actual owner, Innovation HQ. If any domain rental payments had been made by Earth between January 1 and June 30, 2021, such payments were not disclosed on Earth's accompanying profit-and-loss statement. *See* **Exhibit 10**.

48.     In the Subscription Agreement, DEM (through Ralls) expressly warranted to HI that there were no claims, actions, suits, or proceedings threatened or pending against DEM, Earth, or EarthSnap. *See* **Exhibit 9** at § 3(h).

49.     In fact, as Ralls was well aware, he and Earth had been sued in Telluride, Colorado by Ralls' prior company, PlantSnap, Inc. ("PlantSnap"), in March 2021. On March 17, 2021, PlantSnap initiated an action against Ralls and Earth before the San Miguel County, Colorado District Court (the "State Court") in the case styled, *PlantSnap Inc. v. Ralls*, No. 2021CV30005 (Colo. Dist. Ct. San Miguel Cnty. Mar. 17, 2021) (the "State Court Action"). A true and correct copy of the complaint in the State Court Action is attached as **Exhibit 11**.

50.     In its complaint in the State Court Action, PlantSnap asserted ten claims for relief, including: (1) a claim for a declaratory judgment that Ralls had been removed as an officer and director of PlantSnap; (2) a claim for conversion against Ralls and Earth; (3) a claim for civil theft against Ralls and Earth; (4) a claim for breach of fiduciary duties against Ralls; (5) a claim for

aiding and abetting breach of fiduciary duties against Earth; (6) a claim for fraud against Ralls; (7) a claim for unjust enrichment against Ralls and Earth; (8) a claim for a constructive trust against Ralls and Earth; (9) a claim for tortious interference with contractual relationships against Ralls; and (10) a claim for a temporary restraining order and/or preliminary injunction against Ralls enjoining Ralls from acting on behalf of PlantSnap and ordering Ralls to immediately turn over access to PlantSnap's accounts. *See* **Exhibit 11**.

51.    The underlying basis for PlantSnap's complaint was that Ralls and Earth were stealing from PlantSnap and using PlantSnap to engage in widespread, years-long fraudulent activity. *See* **Exhibit 11**.

52.    Ralls intentionally concealed and did not disclose to HI the existence of the State Court Action.

53.    In the Subscription Agreement, DEM (through Ralls) expressly affirmed that it owned or possessed sufficient legal rights to all patents, copyrights, trade secrets, information and proprietary rights "necessary for its business without any conflict with, or infringement of, the rights of others." *See* **Exhibit 9** at § 3(k).

54.    Further, DEM promised that it had not received any notification that its business activities were in violation of another party's intellectual property rights. *See* **Exhibit 9** at § 3(k).

55.    Contrary to these representations, Ralls knew that he was already litigating the ownership of the same intellectual property that he had assured HI would make DEM a "huge global success."

56.    In the Subscription Agreement, DEM (through Ralls) expressly affirmed that it had disclosed (or was contemporaneously disclosing) to HI all "developments affecting the owned or leased properties or assets of the Company or its Subsidiaries that could detract from the value of such property or assets, interfere with any present or intended use of any such property or assets, or adversely affect the marketability of any such properties or assets." **Exhibit 9** at § 3(j).

57.    Despite DEM's warranty, DEM had never disclosed to HI that DEM (or its relevant subsidiary) did not own the Earth.com domain, that Earth was in active breach of its lease agreement relating to the domain, that Earth's valuable website was actually subject to repossession at any moment, and that Earth and Ralls were actively being sued for ownership and control of EarthSnap's only meaningful asset.

58.    HI would have never signed the Subscription Agreement had HI known that Ralls was misrepresenting facts related to (1) the domain ownership; (2) the financials of Earth as of a certain date; (3) nonlitigation; and (4) its ownership of intellectual property.

**C.    HI Made Additional Investments Based on Ralls' Continued False Representations.**

59.    Following the Subscription Agreement, DEM (through Ralls) induced HI to invest an additional $325,000 in DEM in April 2022. A true and correct copy of the Series Seed Preferred

Stock Subscription Agreement dated April 19, 2022 (the "April 2022 Subscription Agreement") is attached as **Exhibit 12**.

60.     Upon information and belief, on April 25, 2022, Innovation sent a letter to Ralls declaring a default under the Rent to Own Agreement and notifying Ralls of its intention to repossess the Earth.com domain.

61.     Upon information and belief, neither Ralls, Earth, nor any affiliated entity cured the default under the Rent to Own Agreement, and Innovation repossessed the Earth.com domain.

62.     DEM (through Ralls) induced HI to invest another $131,500 in June 2022. A true and correct copy of the Series Seed Preferred Stock Subscription Agreement dated June 27, 2022 (the "June 2022 Subscription Agreement") is attached as **Exhibit 13**.

63.     HI transferred the relevant funds to DEM between February 2022 and June 2022. True and correct copies of HI's bank statements for that time period are attached as **Exhibit 14**.

64.     In connection with HI's incremental investments, on or about April 19, 2022, and June 27, 2022, HI and DEM (through Ralls) executed two additional Stock Subscription Agreements. *See* **Exhibit 12**; **Exhibit 13**.

65.     In each Subscription Agreement, DEM (through Ralls) reaffirmed all of its previous, false, February 2022 representations, relating to asset title, the accuracy of financial information, the disclosure of significant developments, the clear and undisputed ownership of intellectual property, and the non-existence of any adverse litigation. *See* **Exhibit 12** at §§ 3(g), 3(h), 3(j), and 3(k); **Exhibit 13** at §§ 3(g), 3(h), 3(j), and 3(k).

**D.     Ralls Breached the Channel Partner Agreements and Diverted Funds Due to HI.**

66.     As an additional inducement to secure HI's funds, expertise, and ability to drive website/domain traffic, Earth (through Ralls) executed a "Channel Partner Agreement" with HI on or about June 27, 2022. A true and correct copy of the Channel Partner Agreement dated June 27, 2022 (the "June Channel Partner Agreement") is attached as **Exhibit 15**.

67.     Pursuant to that contract, Earth—among other promises—promised to remit to HI 75% of the entity's subsequent monthly advertising profits, up to a total fee of $1,206,500. *See* **Exhibit 15** at § 2.2.

68.     Upon information and belief, Ralls concealed ensuing revenues from HI, redirected funds to new accounts that he controlled, and otherwise acted to intentionally divert to himself funds that were due to HI.

69.     Upon information and belief, Ralls never intended to honor Earth's profit-sharing obligations as set forth in the June Channel Partner Agreement.

70.    As yet another inducement to secure HI's funds and expertise and ability to drive website/domain traffic, EarthSnap (through Ralls) also executed a "Channel Partner Agreement" with HI on or about August 15, 2022. A true and correct copy of the Channel Partner Agreement (the "August Channel Partner Agreement") is attached as **Exhibit 16**.

71.    Pursuant to that contract, EarthSnap—among other promises—promised to remit to HI 75% of the entity's subsequent monthly advertising profits, up to a total fee of $1,251,000. *See* **Exhibit 16** at § 2.2.

72.    Upon information and belief, Ralls concealed ensuing revenues from HI, redirected funds to new accounts that he controlled, and otherwise acted to intentionally divert to himself funds that were due to HI.

73.    Upon information and belief, Ralls never intended to honor EarthSnap's profit-sharing obligations as set forth in the August Channel Partner Agreement.

74.    HI subsequently made additional payments of $39,500 and $2,000 in August and October 2022, respectively, bringing HI's total investment in DEM and its subsidiaries to approximately $1,248,000.00.

**E.    HI Was Defrauded by Ralls and Suffered Damages as a Result Thereof.**

75.    HI was unaware of any claims or allegations against Ralls, DEM, EarthSnap, or Earth until after HI's principal received a subpoena in August 2022. A true and correct copy of the Subpoena for Production of Documents From Nonparty is attached as **Exhibit 17**. His attorney subsequently obtained the underlying San Miguel County complaint against Ralls and Earth.

76.    When confronted by HI's principal about the lawsuit and the Earth.com domain ownership misrepresentation, Ralls candidly conceded that he had "never mentioned the earth.com issue"; but, Ralls asserted, with just a little more time and money, he would be able to pay back HI's "full investment asap."

77.    On August 4, 2022, Ralls texted HI's principal a request for a $75,000.00 wire transfer along with the following statement: "I'm sorry that i never mentioned the earth.com issue, but I never really saw it as an issue…it was always [sic] a PlantSnap thing in my mind."

78.    After HI's principal received the subpoena for the State Court Action, Ralls communicated to HI's principal that he did not mean to let him down and wanted to make things right. He further communicated, "You got involved in a mess that you should have nothing to do with."

79.    At all times relevant herein, Ralls engaged in the dissemination of false or misleading statements and the concealment of material information that he was required by law and good conscience to disclose with the intent to defraud HI.

80. Based on the conduct described above, much of which is fraudulent and an abuse of the corporate form, Ralls is personally liable, both in contract and in tort, for the losses caused to HI.

81. Upon information and belief, and in violation of his duties and obligations to HI under DEM's governing documents and the various Subscription Agreements, Ralls also concealed and converted corporate assets and funds of DEM, EarthSnap, and Earth for his own personal benefit.

82. Upon information and belief, Ralls may have so improperly used or managed DEM, Earth and EarthSnap, or commingled assets, such that the various entities' corporate forms can and should be disregarded.

83. Upon information and belief, Earth and DEM are the alter egos of Ralls.

84. In reliance on Ralls' representations, HI made the following payments to Ralls and his entities, in a total amount of $1,248,000.00, as outlined below, without receiving any of its bargained-for benefits:

| Date | Amount | Entity |
|---|---|---|
| September 1, 2021 | $125,000.00 | Earth.com, Inc. |
| November 2, 2021 | $300,000.00 | Earth.com, Inc. |
| December 1, 2021 | $175,000.00 | Earth.com, Inc. |
| December 30, 2021 | $150,000.00 | Earth.com, Inc. |
| February 18, 2021 | $50,000.00 | Earth.com, Inc. |
| February 23, 2021 | $146,600.00 | Earth.com, Inc. |
| March 2022 | $128,400.00 | Digital Earth Media, Inc. |
| June 2022 | $128,400.00 | Digital Earth Media, Inc. |
| August 2022 | $39,500.00 | Digital Earth Media, Inc. |
| October 7, 2022 | $2,000.00 | Digital Earth Media, Inc. |

85. HI has evidence of an admission from Ralls regarding his wrongdoing and received a promise from Ralls that he will return HI's monies to it. In the event that Ralls did not have the funds to give to HI, Ralls at one point proposed to reallocate the equity percentage of DEM so that HI would became the majority shareholder.

86. HI never received its monies from Ralls and was never made the majority shareholder of DEM.

87. The entirety of HI's monies were deposited into, or transferred into, accounts controlled by Earth, Ralls, and/or DEM.

88. Moreover, DEJ Partners, LLC ("DEJ"), a seed investor of PlantSnap, on September 23, 2022, filed "DEJ Partners, LLC's Second Amended Counterclaims and Third-Party Complaint" in the State Court Action, asserting claims against Ralls, Earth, EarthSnap, DEM, and another entity created by Ralls. *See* Case No. 23-11620-TBM, Docket No. 69 at 9. DEJ asserted,

*inter alia*, claims against Ralls and Earth under the Colorado Uniform Fraudulent Transfer Act, a claim under the Colorado Organized Crime Control Act, a claim for fraudulent inducement against Ralls, Earth, EarthSnap, DEM, and another other entity, claims for breach of contract against Ralls, and a claim for specific performance against Ralls. *See* Case No. 23-11620-TBM, Docket No. 69 at 9.

89.     On March 30, 2023, Ralls texted HI's principal that he intended to have his entities file for bankruptcy so that the automatic stay could be in place and stop the State Court Action "because trial date [sic] is coming up quickly."

**F.     Ralls Files for Bankruptcy Twice Seeking to Avoid Paying Back Creditors**

90.     On April 19, 2023, and on the eve of trial in the State Court Action, Ralls filed for bankruptcy under Subchapter V of Chapter 11 of the Bankruptcy Code. *See* Case No. 23-11620-TBM, Docket No. 1; Case No. 23-11621-TBM, Docket No. 1; Case No. 23-11622-TBM, Docket No. 1 (collectively, the "<u>Colorado Bankruptcy Cases</u>").

91.     On June 13, 2023, DEJ and PlantSnap filed a motion for relief from the automatic stay in the Colorado Bankruptcy Cases. *See* Case No. 23-11620-TBM, Docket Nos. 25 and 29.

92.     On July 19, 2022, the court in the Colorado Bankruptcy Cases granted DEJ and PlantSnap's motion for relief from the automatic stay so that the State Court Action could continue against Ralls and Earth. *See generally* Case No. 23-11620-TBM, Docket No. 69.

93.     On July 24, 2023, HI filed a complaint against Ralls alleging several causes of action, including to hold his debt as not dischargeable in his bankruptcy case. *See* Case No. 23-11620-TBM, Docket No. 79.

94.     Due to the automatic stay being lifted, Ralls and EarthSnap sought to voluntarily dismiss the Colorado Bankruptcy Cases and the cases were closed on December 7, 2023. *See* Case No. 23-11620-TBM, Docket No. 133; Case No. 23-11621-TBM, Docket No. 109; Case No. 23-11622-TBM, Docket No. 82

95.     PlantSnap and Ralls proceeded to resolve the claims asserted in the State Court Action, and the parties executed a binding term sheet dated February 19, 2024. A true and correct copy of the Binding Term Sheet is attached as **<u>Exhibit 18</u>**.

96.     The State Court agreed that there is no dispute as to the validity of the Agreement, and on July 31, 2024, it entered Ralls' confessed judgment, in PlantSnap's favor, in the amount of $2,500,000 based on the Agreement being in default. In the confessed judgment, Ralls admitted to fraud, fraudulent inducement, fraudulent transfer, conversion, civil theft, and common law fraud, deceit, or manipulation in connection with the sale of securities.

97.     Before PlantSnap was able to collect on its judgment, Ralls filed voluntary petitions for relief under Subchapter V of Chapter 11 of the Bankruptcy Code in this Court.

34317889.2

98.     Specifically, on June 17, 2024, Ralls filed EarthSnap for bankruptcy under Subchapter V of Chapter 11 of the Bankruptcy Code in the Eastern District of Texas, Tyler Division. *See* Case No. 24-60363, Docket No. 1.

99.     Then, on August 18, 2024, Ralls filed his own second bankruptcy case under Subchapter V of Chapter 11 of the Bankruptcy Code in the Eastern District of Texas, Tyler Division (collectively, "Texas Bankruptcy Cases"). *See* Case No. 24-60504, Docket No. 1.

### G.     Ralls Continues His Scheme After Filing the Texas Bankruptcy Cases.

100.     The Section 341 meeting of creditors initially took place in Ralls' bankruptcy case on September 25, 2024 ("September 341 Meeting"). A true and correct copy of the transcript of the September 341 Meeting is attached as **Exhibit 19**.

101.     The September 341 Meeting was continued to October 9, 2024 (the "October 341 Meeting"). A true and correct copy of the transcript from the October 341 Meeting is attached as **Exhibit 20**.

102.     Among other statements made by Ralls, he admitted that the primary entity he operates, EarthSnap, does not have a separate bank account. Rather, Ralls indicated that revenues produced by EarthSnap and Earth.com are deposited directly into a bank account in the name of Metaversal Knowledge, Inc. ("Metaversal"), which is yet another entity owned and controlled by Ralls but is not part of the Texas Bankruptcy Cases. *See* **Exhibit 19** at 39:13.

103.     Ralls also testified that this Metaversal bank account, in turn, is utilized by Ralls to pay for most of his personal expenses, including the rent for the house in which Ralls resides and the finance payments for the vehicle he drives. *See* **Exhibit 19** at 43:10; 25:17.

104.     Ostensibly a consolidated service provider for both Earth.com and EarthSnap, Metaversal actually makes no attempt to pro-rate or separately account for its billings among its two clients.

105.     During the October 341 Meeting, Ralls also admitted that he has no documented or discernible management agreement with any of the various entities that he manages, or through which he provides overlapping management services. *See* **Exhibit 20** at 41:12.

106.     Specifically, when asked whether there are any service agreements or expense sharing agreements, or "any other contract" including management agreements between Earth.com, EarthSnap, and DEM, Ralls stated that he couldn't recall, but that "there's not anything separate between the [two entities] other than the – whatever the lawyers create when they create the entities and the shareholder agreements." *Id.*

107.     And, when expressly asked whether there are any agreements between Metaversal, and DEM, EarthSnap, and Earth.com in which Metaversal is compensated for anything "other than its expenses in this service provision arrangement," Ralls confirmed that no agreements exist. *See* **Exhibit 20** at 43:22.

108.    Additionally, despite the existence of other stakeholders, Ralls determines his own pay unliterally and on an ad hoc basis, based upon whether he believes the Metaversal bank account is holding adequate excess revenue received for or on behalf of Earth.com and EarthSnap. *See* **Exhibit 19** at 23.

109.    When asked at the October 341 Meeting, how Ralls determined his estimated $7,000 per month salary, he responded that he did not "recall the thought process behind it" and that Metaversal did not utilize the services of any bookkeepers for the 2024 fiscal year. *Id.*

110.    In several other respects, the legal and practical boundaries between Ralls, the two corporate affiliates he manages (Earth.com and EarthSnap), and Ralls' affiliate (Metaversal), and EarthSnap's holding company (DEM) have shifted or disappeared entirely.

111.    For example, EarthSnap, which is the subject of its own bankruptcy proceeding in this Court, has filed a schedule of executory contracts claiming a "Rent to Own Domain Contract" with Innovation HQ, Inc. *See In re EarthSnap, Inc.*(Bankr. D. Colo), No. 23-11621-TBM, Docket 32 at 14.

112.    Similarly, all of the key Earth.com "advertising contracts" that were reportedly held by Earth.com one year ago, are now claimed by EarthSnap in it pending bankruptcy in this Court, with the same matching typos in the contracts' description.

113.    Ralls claims Earth does not own the valuable earth.com domain, despite previously listing it as a $6 million asset on Earth's balance sheet.

114.

115.    In addition, Ralls admitted that he does not have a personal bank account, but uses the Metaversal bank account for his expenses. *See* **Exhibit 20** at 45:10.

116.    Ralls also testified at the EarthSnap section 341 meeting of creditors and introduced a new entity, Greenmind LLC ("Greenmind").

117.    Greenmind was formed right before Ralls filed the Texas Bankruptcy Case.

118.    Ralls testified at the EarthSnap 341 Meeting that Greenmind was created specifically to act as a "management company" for Earth and EarthSnap.

119.    During testimony, Ralls stated that there were no written service, management, or expense-sharing agreements between Greenmind and Earth, EarthSnap, or DEM.

120.    As of May 22, 2025, Greenmind maintained the only active operating account used to receive funds from Earth. Earth did not maintain its own bank account during this period.

121.    Based on financial documents and testimony submitted in the EarthSnap bankruptcy proceeding, Earth should have generated almost $1.2 million in estimated net profits between July 2024 and May 2025.

122.    As of May 22, 2025, Ralls expected the Greenmind account to have between $48,000 and $75,000.

123.    A valuation report dated April 2025 prepared by Quist Valuation, which was commissioned by Ralls postpetition, includes a balance sheet reflecting an accounts receivable owed by Greenmind to Earth in the amount of $789,995.

124.    According to the same valuation report, Greenmind did not record income of its own.

125.    When asked why the Greenmind bank account has so little money in light of Earth's substantial profits, Ralls states that revenue is collected thirty to sixty days after it is earned.

126.    Even with this explanation, Ralls has not been able to account for more than $1.1 million in revenue during his bankruptcy case.

127.    In testimony at the 341 meetings and in the EarthSnap proceeding, Ralls confirmed that he does not maintain a personal bank account. Instead, he pays personal expenses, including housing and professional fees, from the Greenmind bank account.

128.    Upon information and belief, Ralls is using Earth's profits to pay his attorneys and experts in two bankruptcy cases, two appeals, and three nondischargeability actions.

129.    Upon information and belief, Ralls is also using Earth's profits to pay for his second residence in Nashville, Tennessee, which is a three-bedroom house that costs between $4,000 and $5,000 a month.

130.    PlantSnap, DEJP, and HI moved to convert the cases, which the Court did on April 21, 2025. In the Court's order, it held that Ralls grossly mismanaged his estate, finding that EarthSnap or a non-debtor affiliated entity paid his living expenses, and that "money flows back and forth, up and down, between Mr. Ralls and [his related] entities without clear explanation or disclosure." EarthSnap Case, Docket No. 167 at 8–11.

131.    Ralls testified that his compensation increased after conversion of his individual bankruptcy case to Chapter 7, and that his monthly compensation or personal expenditures paid through Greenmind increased to approximately $16,000 per month, which would equate to Ralls receiving a 229% raise after the Court converted him bankruptcy case.

132.    As a shareholder in DEM, HI has not received a single penny in distributions from DEM since the filing of the Texas Bankruptcy Case.

133.    Upon information and belief, assets and funds have been shifted around, for no operational reason between Ralls and the various entities that he exclusively controls.

## IV. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
*Conversion*

134.    HI restates and realleges the allegations contained in each preceding paragraph of this Complaint as though fully set forth therein.

135.    Ralls, acting under the auspices of DEM, Earth, and EarthSnap have wrongfully exercised dominion or ownership over HI's property, including all monies transferred.

136.    HI has demanded that Ralls, DEM, Earth, and EarthSnap return HI's property.

137.    Ralls and the entities he controls have not returned HI's property despite Ralls' promise to return monies to HI or to increase its equity ownership in DEM.

### SECOND CAUSE OF ACTION
*Civil Theft Under C.R.S. § 18-4-401*

138.    HI restates and realleges the allegations contained in each preceding paragraph of this Complaint as though fully set forth therein.

139.    C.R.S. § 18-4-401 (the "Theft Statute") defines theft, in relevant part, as:

A person commits theft when he knowingly obtains or exercises control over anything of value without authorization . . . and
(a) Intends to deprive the other person permanently of the use or benefit of the thing of value;
(b) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit; [or]
(c) Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use or benefit . . . .

140.    Ralls, under the auspices of Earth, EarthSnap, and DEM, took and deposited monies that belonged to HI.

141.    Ralls, under the auspices of Earth, EarthSnap, and DEM, took and exerted control or possession over property that belongs to HI, including all the monies transferred by HI.

142.    Ralls' conduct was willful, wanton, and malicious.

14

143.    Pursuant to C.R.S. §§ 18-4-401 and 18-4-405, Ralls, Earth, EarthSnap, Metaversal and DEM engaged in civil theft and are indebted to HI for treble damages in an amount to be determined a trial plus interest at the statutory rate of 8% per annum.

144.    Pursuant to C.R.S. § 18-4-405, HI is entitled to its reasonable attorneys' fees and costs incurred in connection with this action.

## THIRD CAUSE OF ACTION
*Breach of Fiduciary Duties*

145.    HI restates and realleges the allegations contained in each preceding paragraph of this Complaint as though fully set forth therein.

146.    Ralls, as an officer and director of DEM, owed fiduciary duties to DEM and DEM's shareholders, including the duty of loyalty and the duty of care, during all periods relevant to this action.

147.    As a fiduciary, Ralls has a duty to protect the rights of DEM and HI, act openly and above board, manage the corporate affairs in good faith, and give DEM and HI the benefit of his best judgment and care.

148.    Ralls also has a duty to put the best interests of DEM and its shareholders, including HI, over his own interests as an individual.

149.    Ralls breached his fiduciary duties when he transferred funds from DEM, Earth, EarthSnap, and Metaversal to himself and continues to breach his fiduciary duties by continuing to transfer funds to himself through these entities.

150.    Ralls breached his fiduciary duties when he intentionally caused DEM to breach its contractual obligations to HI, made material misrepresentations to HI, and purposefully failed to disclose material information to HI despite a duty to do so.

151.    HI directly suffered damages as a result of Ralls' breaches of fiduciary duties in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
*Aiding and Abetting Breach of Fiduciary Duties*

152.    HI restates and realleges the allegations contained in each preceding paragraph of this Complaint as though fully set forth therein.

153.    Earth, EarthSnap, and DEM, through Ralls, owed fiduciary duties to HI.

154.    Earth, EarthSnap, and DEM breached their fiduciary duties to HI by misappropriating HI's funds, intentionally causing DEM to breach its contractual obligations to

HI, making material misrepresentations to HI, and purposefully failing to disclose material information to HI despite a duty to do so.

155.    Ralls knowingly participated in these breaches of fiduciary duties owed to HI.

156.    HI directly suffered damages as a result of Ralls' contribution to breaches of fiduciary duties in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION
*Fraud*

157.    HI restates and realleges the allegations contained in each preceding paragraph of this Complaint as though fully set forth therein.

158.    Ralls made false representations of material fact in connection with his solicitation and acquisition of funds from HI in 2021 and 2022, including but not limited to the misrepresentations he made in connection with the Subscription Agreement, Balance Sheet, April 2022 Subscription Agreement, June 2022 Subscription Agreement, June Channel Partner Agreement, and August Channel Partner Agreement.

159.    Ralls knew his representations regarding the exclusive ownership and control of the Earth.com domain were false at the time he made them. He knew that these particular misrepresentations he was making related to the most significant and material matters that HI was concerned with.

160.    Ralls knew his representations regarding the long-term viability, ownership, and exclusive control of the Earth.com website were false at the time he made them. He knew that these particular misrepresentations he was making related to the most significant and material matters that HI was concerned with.

161.    Ralls knew his representations regarding the exclusive ownership and control of the app being developed by EarthSnap were false at the time he made them. He knew that these particular misrepresentations he was making related to the most significant and material matters that HI was concerned with.

162.    Ralls knew his representations regarding the lack of any threats, contingencies, negative "developments," or adverse claims being asserted with respect to the EarthSnap app or the Earth.com website/domain were false at the time he made them. He knew that these particular misrepresentations he was making related to the most significant and material matters that HI was concerned with.

163.    Ralls knew his representations regarding the ability of HI to recover its investment were false at the time he made them. He knew that these particular misrepresentations he was making related to the most significant and material matters that HI was concerned with.

34317889.2

164.    Ralls had no intention to correct his false representations or disclose accurate information about the ownership of the Earth.com domain, the existence or seriousness of the State Court Action, the disputed nature of (and the alleged misappropriated nature of) EarthSnap's and Earth's intellectual property, and the developments relevant to EarthSnap and Earth's only significant assets.

165.    Ralls had no intention to honor the June Channel Partner Agreement or the August Channel Partner Agreement.

166.    Ralls made the false representations with the intent that HI would loan monies to or invest monies into his entities.

167.    HI had no knowledge that Ralls, an officer and director of Earth and DEM at the time, made false representations at the time it provided funds to Earth and/or DEM or entered into the Subscription Agreement, April 2022 Subscription Agreement, June 2022 Subscription Agreement, June Channel Partner Agreement, and August Channel Partner Agreement.

168.    HI relied on Ralls' representations by transferring money to Ralls through Earth and DEM.

169.    HI's reliance on Ralls' representations was reasonable under the circumstances described herein.

170.    HI did not discover Ralls' representations were false, or otherwise have any reason to doubt Ralls' representations, until on or about August 2022.

171.    HI did not discover that Ralls' continues to perpetuate a scheme by which he diverts funds from DEM to himself through Metaversal and other entities.

172.    Ralls' false representations and material omissions resulted in HI's damages in an amount to be proven at trial.

SIXTH CAUSE OF ACTION
*Fraudulent Inducement*

173.    HI restates and realleges the allegations contained in each preceding paragraph of this Complaint as though fully set forth therein.

174.    Ralls made false and reckless representations and omissions of material fact to HI as described herein.

175.    Ralls intended that HI rely on his representations and omissions in order to induce HI into transferring its monies to his entities.

176.    HI reasonably and justifiably relied to its detriment upon Ralls' representations prior to entering into the Subscription Agreement, April 2022 Subscription Agreement, June 2022

17

Subscription Agreement, June Channel Partner Agreement, and August Channel Partner Agreement.

177.   HI reasonably and justifiably relied to its detriment upon Ralls' representations prior to transferring its monies to Earth and/or DEM.

178.   HI did not discover Ralls' representations were false until on or about August 2022.

179.   As a direct and proximate result of Ralls' false representations, omissions, and fraudulent conduct, HI has been damaged in an amount to be proven at trial.

180.   Ralls made the false representations with the intent that HI would invest monies into his entities.

SEVENTH CAUSE OF ACTION
*Unjust Enrichment*

181.   HI restates and realleges the allegations contained in each preceding paragraph of this Complaint as though fully set forth therein.

182.   At HI's expense and to its detriment, HI conferred a benefit on Ralls when it transferred monies to Ralls (through Earth and DEM) but received no financial benefit from the monies paid or lent, the Subscription Agreement, the April 2022 Subscription Agreement, the June 2022 Subscription Agreement, the June Channel Partner Agreement, or the August Channel Partner Agreement.

181.   Ralls, acting under the auspices of Earth, EarthSnap, and DEM, accepted or realized benefits conferred upon him by HI under circumstances that would make it unjust for Ralls to retain the benefits without paying commensurate compensation to HI.

182.   As a majority shareholder, officer, and director of DEM, Ralls owed fiduciary duties to DEM and to DEM's shareholders, including HI.

183.   Ralls breached his fiduciary duties by making improper distributions to himself, and by taking monies belonging to HI, and by making misrepresentations to HI.

184.   Ralls' retention of the benefits he received violates the fundamental principles of justice, equity, and good conscience, and constitutes unjust enrichment.

185.   As a direct and proximate cause of Ralls' actions as stated herein, HI suffered damages in an amount to be proven at trial.

186.   HI has no adequate remedy at law.

EIGHTH CAUSE OF ACTION
*Constructive Trust*

34317889.2

187.    HI restates and realleges the allegations contained in each preceding paragraph of this Complaint as though fully set forth therein.

188.    Ralls, Earth, and DEM obtained HI's monies by fraud and breach of fiduciary duties.

189.    Ralls owed HI fiduciary duties to DEM as a majority shareholder, officer, and director of DEM.

190.    Ralls breached his fiduciary duties by making improper distributions to himself and by taking monies belonging to HI.

191.    A constructive trust should be created for HI's benefit, consisting of the amounts that were improperly transferred to Earth, DEM, and/or Ralls from HI.

## NINTH CAUSE OF ACTION
*Nondischargeability of Ralls' Debt Under 11 U.S.C. § 523(a)(2)(A)*

192.    HI restates and realleges the allegations contained in each preceding paragraph of this Complaint as though fully set forth therein.

193.    Section 523(a)(2)(A) of the Bankruptcy Code provides that there is no discharge for an individual debtor of any debt for money to the extent obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . ." 11 U.S.C. § 523(a)(2)(A).

194.    Ralls obtained HI's monies by actual fraud and false representations.

195.    Ralls made false representations of material fact and fraudulently concealed the truth from HI.

196.    Ralls made false representations of material fact when he told HI's principal that he—through his entities—owned the domain Earth.com, including through the various Subscription Agreements.

197.    When Ralls made those representations to HI, he knew that he did not own the domain Earth.com.

198.    Ralls had superior knowledge about the ownership of Earth.com compared to HI and its principal.

34317889.2

199.    Ralls represented that he owned Earth.com through his entities in order to induce HI to make monetary investments to him through his entities.

200.    When HI sought assurances that Ralls owned the Earth.com domain, Ralls continued to represent that he owned the Earth.com domain.

201.    Ralls never disclosed to HI that he had merely signed a "Rent to Own Agreement" with the domain's owner, who, upon information and belief, was entitled to approximately $5 million in additional payments from Ralls (or DEM or Earth) before domain ownership would be transferred.

202.    Ralls made false representations in connection with the June Channel Partner Agreement and August Channel Partner Agreement because he never intended to honor those agreements and remit payment to HI in accordance with those agreements.

203.    Ralls made false representations when he repeatedly assured HI in each Subscription Agreement that DEM, Earth, and EarthSnap were not involved in any litigation.

204.    Ralls made false representations when he repeatedly assured HI in each Subscription Agreement that DEM, Earth, and EarthSnap exclusively owned and indisputably controlled all intellectual property or other proprietary rights important to the entities' business operations.

205.    Ralls made false representations when he repeatedly assured HI in each Subscription Agreement that Ralls had disclosed to HI all developments affecting any owned or leased properties of DEM, Earth, and EarthSnap.

206.    Ralls made false representations when he repeatedly assured HI in each Subscription Agreement that Ralls had disclosed all developments that could detract from the value of any owned or leased property or interfere with its use.

207.    Ralls made false representations when he repeatedly assured HI in each Subscription Agreement that the Balance Sheet information provided by Ralls was accurate.

208.    Ralls had a duty to disclose the material facts that he concealed or failed to disclose to HI.

209.    Ralls concealed or failed to disclose those facts with the intent of creating a false impression of the actual facts for HI and its principal.

210.    Ralls made the representations with the intent that HI would rely on the representations.

211.    HI justifiably relied on the representations made by Ralls.

212.    The reliance by HI caused damages in the amount of its transferred monies.

34317889.2

213.    The debt that Ralls owes to HI due to the monies he obtained from HI through his false representations and fraud is nondischargeable pursuant to the provisions of 11 U.S.C. § 523(a)(2)(A).

## TENTH CAUSE OF ACTION
*Nondischargeability of Ralls' Debt Under 11 U.S.C. § 523(a)(2)(B)*

214.    HI restates and realleges the allegations contained in each preceding paragraph of this Complaint as though fully set forth therein.

215.    Under section 523(a)(2)(B) of the Bankruptcy Code, if a debt is obtained by a statement respecting the debtor's financial condition, then the statement must be in writing for the debt to be discharged.

216.    Through the use of materially false writing, Ralls misappropriated HI's funds.

217.    Ralls made materially false representations in connection with the Subscription Agreement, Balance Sheet, April 2022 Subscription Agreement, June 2022 Subscription Agreement, June Channel Partner Agreement, or August Channel Partner Agreement.

218.    Ralls made materially false statements in writing respecting his own and his entities' financial condition.

219.    HI reasonably relied on these writings.

220.    Ralls' actions were completed with an intent to deceive.

221.    Ralls remains liable to HI for these actions.

222.    As a result of Ralls' actions, HI was actually and proximately damaged in an amount to be proven a trial.

223.    The debt that Ralls owes to HI due to the monies he obtained from HI through his use of materially false writings is nondischargeable pursuant to the provisions of 11 U.S.C. § 523(a)(2)(B).

## ELEVENTH CAUSE OF ACTION
*Nondischargeability of Ralls' Debt Under 11 U.S.C. § 523(a)(4) for Larceny or Embezzlement*

224.    HI restates and realleges the allegations contained in each preceding paragraph of this Complaint as though fully set forth therein.

225.    Ralls willfully failed to remit payments to HI in connection with the June Channel Partner Agreement and the August Channel Partner Agreement.

226.   Ralls embezzled property of HI and retained revenue for himself rather than paying HI in accordance with June Channel Partner Agreement and the August Channel Partner Agreement.

227.   Ralls converted the property of HI for his own use.

228.   Ralls had the intent to permanently deprive HI of its property.

229.   The conduct of Ralls as alleged, which is a violation of the Theft Statute, constitutes larceny and embezzlement for the purposes of 11 U.S.C. § 523(a)(4).

230.   The debt that Ralls owes to HI due to his larceny or embezzlement is nondischargeable pursuant to the provisions of 11 U.S.C. § 523(a)(4).

## TWELFTH CAUSE OF ACTION
*Nondischargeability of Ralls' Debt Under 11 U.S.C. § 523(a)(6) for Willful or Malicious Injury*

231.   HI restates and realleges the allegations contained in each preceding paragraph of this Complaint as though fully set forth therein.

232.   Under section 523(a)(6) of the Bankruptcy Code, an individual debtor will not get a discharge from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

233.   Ralls intended to cause HI's injuries.

234.   Ralls had knowledge that HI would have never made the investments in Earth or DEM had he not misrepresented that he owned through his entities the Earth.com domain.

235.   Ralls had knowledge that HI would not have executed the Subscription Agreement had HI known that any of the representations made therein were false.

236.   Ralls had knowledge of HI's rights to the monies owed under the June Channel Agreement and August Channel Agreement.

237.   Ralls had knowledge that his conduct would cause particularized injury upon HI.

238.   Ralls desired the consequences of his actions and/or was certain that HI's injuries would result from it.

239.   Ralls' deceit was ongoing, willful, and malicious.

240.   By taking HI's monies knowingly and deliberately and intending the injury of depriving HI of its use and benefit, Ralls acted willfully and maliciously.

34317889.2

241.   HI has been injured, and those injuries arose from the willful and malicious acts perpetrated by Ralls.

242.   HI's damages will result in a debt owed by Ralls to HI that arose from the willful and malicious acts perpetrated by Ralls.

243.   As a result of these failures and activities, HI has and will continue to suffer losses and damages in the form of economic loss and lost profits.

244.   The debt that Ralls owes to HI due to his willful or malicious injury to HI's property is nondischargeable pursuant to the provisions of 11 U.S.C. § 523(a)(6).

THIRTEENTH CAUSE OF ACTION
*Denial of Discharge Under 11 U.S.C. § 727(a)(2) (Transfer, Removal, or Concealment of Property With Intent to Hinder, Delay, or Defraud Creditors)*

245.   HI restates and realleges the allegations contained in each preceding paragraph of this Complaint as though fully set forth therein.

246.   Pursuant to 11 U.S.C. § 727(c)(1), creditors may object to the granting of a discharge under 11 U.S.C. § 727(a).

247.   Under § 727(a)(2), the court shall deny a discharge where the debtor, with intent to hinder, delay, or defraud a creditor or the bankruptcy estate, transferred, removed, destroyed, mutilated, or concealed (A) property of the debtor within one year prior to the filing of the bankruptcy petition; or (B) property of the estate, after the date of the filing of the petition.

248.   Ralls created Metaversal and Greenmind to divert funds and shield those assets from creditors, including HI.

249.   Greenmind was established on the eve of bankruptcy to replace Metaversal and to prevent HI and other creditors from exercising collection remedies.

250.   Ralls subsequently caused substantial revenue and profits generated by Earth—an entity owned by DEM—to be transferred to Metaversal and Greenmind.

251.   Upon information and belief and according to Ralls' statements, between July 2024 and May 2025, Earth generated approximately $1.2 million in net profit, none of which was distributed to its shareholder DEM, and nearly all of which was diverted to Greenmind.

252.   Greenmind held only between $48,000 and $75,000 as of May 2025. Ralls is unable to account for approximately $1.1 million in missing funds.

253.   Rather than preserve or disclose these assets for the benefit of creditors or the estate, Ralls used Metaversal and Greenmind as a conduit for personal expenses, including food delivery

23

services, groceries, legal fees for multiple proceedings, and a second home in Nashville with monthly expenses between $4,000 and $5,000.

254.   Despite conversion of his case to Chapter 7 and a Trustee's explicit instruction not to remove or dissipate funds, Ralls continued to divert funds from Earth to Greenmind for his personal benefit.

255.   These actions constitute the transfer and concealment of property of the debtor with actual intent to hinder, delay, or defraud creditors within the meaning of § 727(a)(2).

256.   Ralls' discharge must be denied under 11 U.S.C. § 727(a)(2)(A) and (B).

FOURTEENTH CAUSE OF ACTION
*Denial of Discharge – 11 U.S.C. § 727(a)(4)(A)*
*(False Oath or Account in Connection with Case)*

257.   HI restates and realleges the allegations contained in each preceding paragraph of this Complaint as though fully set forth therein.

258.   Under § 727(a)(4)(A), a debtor is not entitled to a discharge if he knowingly and fraudulently made a false oath or account in connection with the bankruptcy case.

259.   A "false oath" includes material omissions or misstatements in the debtor's petition, schedules, and sworn testimony. *See In re Calder*, 907 F.2d 953, 955 (10th Cir. 1990); *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984).

260.   Ralls omitted material facts and provided false testimony in connection with his bankruptcy case.

261.   Ralls claims Earth does not own the valuable earth.com domain, despite previously listing it as a $6 million asset on Earth's balance sheet.

262.   Ralls provided inconsistent and misleading testimony regarding Earth's revenue and Greenmind's bank balance, claiming that revenue delays explained the absence of over $1.1 million in profits.

263.   Ralls mischaracterized the use of diverted funds, including falsely labeling personal expenses as "compensation," and failing to disclose that he received a 229% raise post-conversion.

264.   Ralls also withheld or failed to properly disclose the transfer of nearly $789,995 from Earth to Greenmind, which he described as "accounts receivable" or intercompany debt, despite no documentation or repayment ability.

265.   These omissions and misrepresentations were made knowingly and fraudulently, and are material to the administration of the bankruptcy estate and the discovery of assets.

34317889.2

266.    Accordingly, the Debtor's discharge must be denied under 11 U.S.C. § 727(a)(4)(A).

## V. PRAYER FOR RELIEF

WHEREFORE, HI respectfully prays for relief against Ralls as follows:

a.    For an award of damages—actual, consequential, expectation, restitution, reliance, and/or treble as allowed by law—in an amount to be determined at trial caused by Ralls' conversion, civil theft, breach of contract, breach of fiduciary duties, fraud, fraudulent inducement, and unjust enrichment, plus any interest if applicable;

b.    For an order finding that the indebtedness of Ralls owed to HI in the amount as determined by the Court is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6);

c.    For an order denying Ranta his discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A) or (B) and (a)(4)(A);

d.    For an order establishing a constructive trust for HI's benefit upon the amounts that were improperly transferred to Ralls and Earth from HI and any other property belonging to HI in the possession of Ralls, Earth, or any of their agents acting on their behalf;

e.    For an award of HI's costs and attorneys' fees as allowed by C.R.S. § 18-4-405 and any of the various agreements for this action; and

f.    For an order awarding such other and further relief as the Court deems just and equitable.

Dated this 21st day of July, 2025.

Respectfully submitted,

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**

*/s/ Amalia Y. Sax-Bolder*
Amalia Y. Sax-Bolder, #54959 (admitted *pro hac vice*)
675 15th Street, Suite 2900
Denver, CO 80202
Tel:  (303) 223-1100
Fax:  (303) 223-1111
asax-bolder@bhfs.com

*Attorney for HI Investments, LLC*

34317889.2